J-S62020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMAAL GILL, | |
| Appellant | No. 2943 EDA 2013 |

Appeal from the Judgment of Sentence of October 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003451-2013

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 25, 2014**

Appellant, Jamaal Gill, appeals from the judgment of sentence entered on October 11, 2013.  We affirm.

On May 14, 2013, Appellant entered a negotiated guilty plea to indecent assault and corrupting the morals of a minor.[1]  During the guilty plea colloquy, Appellant admitted to the following facts:

> if called to testify, the [five-year-old c]omplainant . . . [, who is Appellant's] cousin, would [testify] that on or about July [8,] 2012, [she was inside of Appellant's Philadelphia] house. . . .  [At that time, Appellant took the complainant] into the bathroom [and] pull[ed] down her pants.  Further, [the complainant] would [testify] that [Appellant] pulled out his penis and tried to force the [c]omplainant's head onto his penis several times.

---

[1] 18 Pa.C.S.A. §§ 3126(a)(2) and 6301(a)(1)(i), respectively.

N.T. Guilty Plea, 5/14/13, at 5.

The trial court accepted Appellant's guilty plea to indecent assault and corrupting the morals of a minor; and, since Appellant was convicted of a sexually violent offense,[2] the trial court deferred sentencing pending Appellant's Sexual Offenders Assessment Board ("SOAB") evaluation, to determine whether Appellant met the criteria for being deemed a sexually violent predator ("SVP"). Licensed psychologist Barry Zakireh, Ph.D., of the SOAB, conducted Appellant's evaluation and assessment.

Appellant's SVP hearing took place on October 11, 2013 and, during the hearing, Appellant stipulated to Dr. Zakireh's "expertise in the area of forensic psychology," as well as to "[Dr.] Zakireh's report." N.T. SVP Hearing, 10/11/13, at 2-3. Dr. Zakireh's expert report was then admitted into evidence.

Within Dr. Zakireh's expert report, Dr. Zakireh concluded that Appellant met "the criteria set forth in the law for classification as [an SVP]." Dr. Zakireh's Report, dated 8/2/13, at 11. In relevant part, Dr. Zakireh

_____

[2] 42 Pa.C.S.A. § 9799.12 defines a "sexually violent offense" as "[a]n offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II[,] or Tier III sexual offense." 42 Pa.C.S.A. § 9799.12. In this case, Appellant was convicted of indecent assault by forcible compulsion, which is classified as a "Tier II sexual offense" under 42 Pa.C.S.A. § 9799.14(c). Specifically, at the time of Appellant's SVP hearing, indecent assault by forcible compulsion was classified as a Tier II sexual offense under 42 Pa.C.S.A. § 9799.14(c)(1.2).

declared that this final conclusion was based upon the following facts and conclusions:

> The victim in this case was a five year old female at the time of the offense and related to [Appellant] as an extended family member (second cousin). The victim and her mother were visiting the residence of the sister of [Appellant] and it appears that [Appellant] was staying or residing there as well. The victim's mother went to the store leaving the child in the home for about ten minutes. Upon her return, the victim reported to her that [Appellant] took her into [the] bathroom, pulled his pants down, exposed his penis, and attempted to force [her] mouth on his penis several times.

> . . . [Appellant] has two prior arrests and convictions for sexual offenses. On both occasions . . . , he was convicted of [i]ndecent [e]xposure. . . . The presence of multiple victims has a significant relationship to a distinct paraphilic pattern or pathway to sexual offending, or to a pattern of disregard and insensitivity to norms or rules, including those governing sexual relations or impulses.

> . . .

> Related to the nature of sexual contact with the victim: the sexually assaultive behaviors in this case occurred on one occasion. [Appellant's] behavior was intentional, deliberate, likely anteceded by sexual impulses with a prepubescent female (he was 30 years old) despite his previous convictions for [] sexual offenses spanning a period of six years. Hence, his behavior involved a prepubescent minor in the present offense with a significant age difference as well as significant risk-taking and obliviousness or disregard to the likelihood of apprehension or detection. His behavior also appears relatively similar to the prior offenses, which involved indecent exposure with strangers or acquaintances, but in this case he has extended the sexual behavior problems by targeting a prepubescent female. Hence, there is a demonstrated pattern of evolving, repetitive, and persistent sexual offending in this case over a [12] year

- 3 -

period despite multiple prior sanctions and criminal justice interventions.

In terms of relationship to the victim, [Appellant] was related to the victim as an extended family member, but the prior victims of his sexual offenses were unrelated or strangers. Hence, he has had both related and unrelated victims. Offenders who engage in sexual assaults against strangers and/or unrelated persons may have a variety of characteristics or clinical disorders, as do those that assault related individuals. Both circumstances may reflect predatory behavior and/or an underlying mental disorder, and may reflect antisocial or sexually deviant pathways to sexual offending. . . .

In terms of the age of the victim, she was five years old at the time the offense occurred and [Appellant] was [30] years old, a significant age difference. However, there is insufficient evidence of a pedophilic behavior pattern or impulses based on the age difference in this case, as the offense occurred on one occasion and there is no other indication of minor victims in his sexual offending history. . . . [Appellant's] behavior more likely reflects a primarily antisocial orientation with impulse control deficits, aggression, coercion, manipulation, and diverse victim selection based on their availability or opportunity.

. . .

In terms of mental capacity of the victim, there is no indication of specific mental or physical disability on the part of the victim. However, she was a prepubescent child, and significantly at [] risk of harm and negative impact given her age and vulnerability.

In terms of prior offense history, as indicated previously, [Appellant] has a history of two prior arrests and convictions for sexual offenses. . . . [Appellant] also has a history of multiple arrests resulting in sanctions or convictions for nonsexual offenses. . . . A history of sexual and, to a lesser extent, of non-sexual offenses represents a higher risk for sex offense recidivism, with a prior sex offense (charges and/or convictions) as one of the most consistent or robust predictors associated with sex offense

recidivism. [Appellant's] risk for sex offense recidivism is increased due to [the] presence of two prior convictions for sexual offenses; prior convictions for noncontact sexual offenses [], a prior conviction for nonsexual violence [], and the relatively high number of prior [nonsexual] convictions.

. . .

[Appellant] has not gained sufficient skills or applied knowledge to manage or alter his inappropriate or harmful sexual behavior or cognitions despite sanctions or possible treatment.

In terms of the characteristics related to the offender, [Appellant] is currently [31] years old, which is at the age level associated with a higher risk of sex offense recidivism relative to individuals ages 50 or older. . . . Research also indicates that younger offenders, or offenders who manifest an early onset of sexual offending, are at a higher risk of sex offense recidivism, and an early starter pattern may reflect a sexually deviant pathway toward sexual offending behaviors, particularly if there is evidence of repeated offending after an early onset. . . . [Appellant's] first documented sexual offense (first prior sexual offense) occurred when he was [18] years old, which does indicate a relatively early onset of sexually coercive behavior.

. . .

Furthermore, the presence of a personality disorder, particularly Antisocial Personality Disorder, or an antisocial orientation, is also a pathway associated with the emergence, onset, and maintenance of sexually coercive behavior, and has been found to correlate significantly with sexual recidivism.

. . .

[There is a] (high) likelihood that [Appellant] has the potential for, or when afforded the opportunity, to sexually victimize individuals of varied age groups and relationships. . . . [Appellant's] behavior more likely reflects a primary antisocial orientation with impulse control deficits, aggression, coercion, manipulation, and diverse victim

selection based on their availability or opportunity. . . . Overall, [Appellant] has shown an interest or willingness to engage in opportunistically coercive and assaultive sexual contact with multiple victims, a potential to cognitively distort or justify such behavior, as well as disregard the social standards related to sexual behavior.

. . . There is evidence of diverse sex crimes, another factor that may serve as a pathway to repeated sexual coercion or associated with sex offense recidivism. He has assaulted both a related and unrelated or stranger females. His known victims ranged in age from five to over [40]. Status as a single individual is associated with a greater re-offender risk. Given the information about his relational history, his risk along this dimension does appear to be increased as there is no indication that he ever resided with a lover or partner in an intimate relationship for a prolonged, consistent or substantial period.

REFERRAL QUESTION CRITERIA.

. . . [T]he [SOAB must] provide an opinion [on] whether [Appellant] should be classified as a sexually violent predator. Sexually violent predator is defined in statute as a person who has been convicted of a sexually violent offense . . . and who is determined to be a sexually violent predator due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. . . . Predatory is defined as "an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained, or promoted, in whole or in part, in order to support or facilitate victimization."

. . .

Based on the present evaluation, [Appellant] meets the criteria set forth in the Diagnostic and Statistical Manual for Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), for Personality Disorder, NOS, with Antisocial Features. This is a diagnostic category that is consistent with the legal conception of a mental abnormality as defined by the statutes.

. . .

[Appellant] has . . . [engaged] in sexual coercion and other forms of violence or violations of social norms or rights of others on multiple occasions over a prolonged period including three total arrests and convictions/sanctions for sexual offending and with respect to multiple victims or complainants, of varied ages and in different contexts or relationships, over a significant period (12 years) despite apprehension, sanctions, or other interventions including possible treatment. Hence, this pattern includes his sexual offending behaviors in the case of the [i]nstant [o]ffense, and indicates that [Appellant] has significant difficulty controlling his aggressive sexual impulses, unruly behavior, and disregard for social standards/norms, including coercive sexual urges, impulses, and behavior. In particular, this disorder is related to his disregard and lack of concern for the suffering, distress, or [] impact of his actions on the victims, and in his historical inability to modify his behavior based on negative consequences or experiences. These aspects indicate that due to this disorder, [Appellant] has manifested significant difficulty controlling or exerting adequate control over his sexual urges, impulses, and behavior leading to significant cognitive, emotional, and behavioral (volitional) deficits. Furthermore, the presence of Antisocial Personality Disorder . . . is also a pathway associated with the emergence, onset, and maintenance of sexually coercive behavior, and has been found to correlate significantly with sexual recidivism. From this perspective, it is the opinion of this examiner that, in the case of this offender, this mental condition meets the statutory requirement for a Mental Abnormality . . . that predisposes the person toward the commission of criminal sexual acts.

PREDATORY BEHAVIOR CRITERION

. . . In this evaluator's opinion, the statutory criteria [for predatory behavior] is met. . . . [Appellant's] behavior was intentional, deliberate, likely anteced by sexual impulses with a prepubescent female (he was 30 years old) despite his previous convictions for [] sexual offenses spanning a period of six years for the two offenses, though a period of

> [12] years considering the [i]nstant [o]ffense as well. Hence, his behavior involved a prepubescent minor in the present offense with a significant age difference as well as significant risk-taking and obliviousness or disregard to the likelihood of apprehension or detection. . . . [I]t is the opinion of this examiner that [Appellant's] behavior during the [i]nstant [o]ffense clearly corresponds to the legal conception of "predatory," as defined in the Pennsylvania Statutes.

> CONCLUSIONS/OPINION

> . . . [I]t is this Board member's professional opinion, within a reasonable degree of psychological certainty, that [Appellant] meets the criteria set forth in the law for classification as a Sexually Violent Predator. . . .

Dr. Zakireh's Report, dated 8/2/13, at 1-11.

Following the introduction of Dr. Zakireh's report, the Commonwealth rested its case. Appellant did not present any evidence on his behalf.

At the conclusion of the SVP hearing, the trial court concluded that "the Commonwealth [proved] by clear and convincing evidence that [Appellant] does meet the criteria for a sexually violent predator." N.T. SVP Hearing, 10/11/13, at 18. The case proceeded to sentencing, where the trial court sentenced Appellant to the negotiated term of two to four years in prison, followed by three years of probation. N.T. Sentencing, 10/11/13, at 19.

Appellant filed a timely notice of appeal and Appellant now raises the following claim to this Court:

> Was not the evidence insufficient to establish that [A]ppellant met the statutory definition of a "sexually violent predator," where the Commonwealth's expert used a

- 8 -

standard of proof lower than that called for in the governing statute?

Appellant's Brief at 3.[3]

Appellant claims that the evidence was insufficient to support the trial court's SVP determination, as there was no evidence that Appellant's mental abnormality or personality disorder made him "likely" to engage in predatory sexually violent offenses. *Id.* at 10. We review this sufficiency claim under the following standard:

> We do not weigh the evidence presented to the sentencing court and do not make credibility determinations. Instead, we view all the evidence and its reasonable inferences in a light most favorable to the Commonwealth. We will disturb an SVP designation only if the Commonwealth did not present clear and convincing evidence to enable the court to find each element required by the SVP statutes.

---

[3] The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant complied with the order and, as is relevant to the current appeal, Appellant listed the following claim in his Rule 1925(b) statement:

> the evidence was insufficient to prove SVP status as it failed to establish a critical element, the requirement that future predatory behavior be "likely"; to wit: Dr. Zakireh relied upon an incorrect standard when he stated that [Appellant] was [an] SVP because his disorder/mental condition "increased his risk for sexual offending" rather than the correct standard that it be [sic] "probable" or "more likely than not" that he would re-offend. Dr. Zakireh's ultimate opinion was thus negated by relying upon an incorrect definition of the word "likely."

Appellant's Rule 1925(b) Statement, 12/2/13, at 1-2.

> We keep in mind that a [SOAB] report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence. Also, while a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case. Accordingly, [such claims] do not affect our sufficiency analysis.

*Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008) (internal citations omitted). Further, as this Court has held, "[a]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." *Commonwealth v. Fuentes*, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*).

At the time of Appellant's SVP hearing, a "sexually violent predator" was defined, by statute, as:

> An individual convicted of an offense specified in . . . [42 Pa.C.S.A. § 9799.14(c)(1.2)[4]] . . . who . . . is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9799.12. The term "mental abnormality" is defined as: "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* A "predatory"

_____

[4] As noted above, at the time of Appellant's SVP hearing, indecent assault by forcible compulsion was classified as a Tier II sexual offense, pursuant to 42 Pa.C.S.A. § 9799.14(c)(1.2).

sexually violent offense is one that is "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization."

*Id.* Finally, as this Court has explained:

> in reaching [an SVP] determination, [a court] must examine the driving force behind the commission of the[] acts, as well as look[] at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an [SVP] assessment; it is not an "independent element."

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038-1039 (Pa. Super. 2013) (internal citation omitted).

According to Appellant, the evidence was insufficient to support the trial court's SVP determination. As Appellant argues, Dr. Zakireh's report did not declare that Appellant's mental abnormality rendered it "likely" that Appellant would re-offend; instead, Appellant claims, Dr. Zakireh's report declared "only that [Appellant's] mental disorder 'increase[d] the likelihood' of re-offending." Appellant's Brief at 10. Therefore, Appellant claims, since there is no evidence that Appellant's mental abnormality made it "likely" that he would re-offend, the evidence was insufficient to support the trial court's SVP determination. *Id.* Appellant's claim fails, as it is belied by the facts and the law.

First, Appellant's argument is contrary to the facts of this case. In this case, Dr. Zakireh's report specifically declared that Appellant suffers from

the mental abnormality of "Personality Disorder, NOS, with Antisocial Features" and that, as a result of this mental abnormality, there is a "**(high) likelihood** that [Appellant] has the potential for, or **when afforded the opportunity**, **to sexually victimize individuals of varied age groups and relationships**." Dr. Zakireh's Report, dated 8/2/13, at 1-11 (emphasis added). Therefore, and contrary to Appellant's claim on appeal, Dr. Zakireh specifically concluded that Appellant's mental abnormality makes it "likely" that Appellant will re-offend. To be sure, Dr. Zakireh opined that Appellant's mental abnormality makes it **highly likely** that Appellant will re-offend.

Second, Appellant's claim on appeal fails because it is contrary to the law of this Commonwealth. On appeal, Appellant claims only that the evidence was insufficient to support the trial court's SVP determination because there is no evidence that "it is more likely than not . . . that [Appellant] will re-offend at some time in the future." Appellant's Brief at 12 (internal emphasis omitted). Yet, this Court has specifically held that "the risk to re[-]offend is not an 'independent element' of the SVP determination, but rather, is but one factor to be considered when making such an assessment." **Commonwealth v. Morgan**, 16 A.3d 1165, 1173 (Pa. Super. 2011); **Stephens**, 74 A.3d at 1038-1039. Instead, to prove that Appellant is an SVP, the statute demands that the Commonwealth prove that Appellant suffers from a "mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12; see also **Morgan**, 16 A.3d at 1173; **Stephens**, 74

- 12 -

A.3d at 1038-1039. Therefore, since Appellant's claim rests upon a legally erroneous foundation, the claim fails for a second reason.

Finally, we note the plethora of evidence that supports the trial court's conclusion that Appellant suffers from a "mental abnormality or personality disorder that makes [him] likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Certainly, Dr. Zakireh concluded, within a reasonable degree of psychological certainty, that Appellant is an SVP. Dr. Zakireh's Report, dated 8/2/13, at 11. Dr. Zakireh based this expert opinion upon the fact that Appellant suffers from the mental abnormality of Personality Disorder, NOS, with Antisocial Features and that, as a consequence of this mental abnormality, Appellant: has a "pattern of evolving, repetitive, and persistent sexual offending . . . over a [12] year period despite multiple prior sanctions and criminal justice interventions;" has "committed sexual offenses against both related and unrelated victims;" has multiple arrests "resulting in sanctions or convictions for nonsexual offenses;" "manifested an early onset of sexual offending;" has "poor empathy or remorse;" has "an interest or willingness to engage in opportunistically coercive and assaultive sexual contact with multiple victims;" has "a potential to cognitively distort or justify" the assaultive sexual contact; has a potential to "disregard the social standards related to sexual behavior;" has "significant difficulty controlling his aggressive sexual impulses, unruly behavior, and disregard for social standards/norms, including coercive sexual urges, impulses, and behavior;" and, committed a

"predatory" sexually violent offense in the underlying case. *Id.* at 1-11. Dr. Zakireh concluded that all of the above traits, actions, and events increase the likelihood that Appellant will re-offend. *Id.* Further, Dr. Zakireh concluded that, as a result of Appellant's mental abnormality, there is a "(high) likelihood that [Appellant] has the potential for, or when afforded the opportunity, to sexually victimize individuals of varied age groups and relationships." *Id.* at 8.

From the above, it is apparent that the evidence was sufficient to support the trial court's determination that Appellant is an SVP. Therefore, Appellant's claim fails for this third, independent reason.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014